Filed 8/13/14  In re S.S. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>S.S.,<br><br>　　Defendant and Appellant. | F067990<br><br>(Super. Ct. No. 12CEJ600726-1)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

Gillian Black, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]　　Before Cornell, Acting P.J., Detjen, J. and Franson, J.

-ooOoo-

Following a contested jurisdictional hearing, the juvenile court found true allegations that S.S. committed three misdemeanors: count 1, resisting an executive officer (Pen. Code,[1] § 69); count 2, battery upon a peace officer (§ 243, subd. (b)); and count 3, resisting, obstructing or delaying a peace officer (§ 148, subd. (a)(1)). The juvenile court found the maximum confinement time for resisting an executive officer to be one year, with credit for one day served. It stayed sentencing on the other two counts pursuant to section 654. S.S. was declared a ward of the court and ordered to reside in the home of a parent or guardian and under the supervision of the probation officer.

On appeal, S.S. argues that the section 148, subdivision (a)(1), resisting, obstructing or delaying a peace officer violation is a lesser included offense of battery upon a peace officer and, as a result, should be dismissed. We disagree and affirm.

## STATEMENT OF THE FACTS

We view the evidence in a light most favorable to the wardship order. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Osband* (1996) 13 Cal.4th 622, 690; see *In re Michael M.* (2001) 86 Cal.App.4th 718, 726; *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1088-1089 [standard of proof is the same in juvenile proceedings as that required in adult criminal trials].)

On September 7, 2012, at approximately 9:30 p.m., Police Officer Jonathan Long and Detective Angie Isaak were dispatched to an address to investigate a report of mail theft. Once there, while talking to the complaining party, a group of approximately 15 juveniles started arguing and fighting nearby.

Long and Isaak ran to the fight and yelled at the juveniles to "knock it off" and "back up." The majority of the juveniles complied, but one female continued to attack

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2.

another female, despite Long's warnings. Long grabbed the attacker by the arm and the other female ran away. At this point, S.S. jumped on Long's back and put his hands over Long's shoulders. Isaak grabbed S.S.'s arm. Long then reached over his shoulder with his right hand and grabbed S.S. by the shirt. Long spun in place to remove S.S. from his back and pushed him against a wooden fence. Isaak let go of S.S.'s arm. S.S. hit the fence "with a good amount of force." Long faced S.S. and grabbed a hold of his shirt. S.S. still had a hold of Long's uniform.

Long rotated S.S. so that he could move him against a nearby chain-link fence. The front of S.S.'s body was against the fence; he was holding onto the chain-link and Long was positioned behind him. When Long told S.S. he was under arrest and to put his hands behind his back, S.S. said, "Only if you tell me 'please.'" Long repeated the command and S.S. again told Long to say "please." Long pried S.S.'s hands from the chain-link and placed him under arrest.

*Defense*

Gabriel Hensley, S.S.'s aunt's boyfriend, testified that he was present at the apartment complex when the fight broke out. Hensley, along with his friend Tyler Geiseo, girlfriend Lenzee Jack Curtis and S.S. were confronted by a group of people who accused the manager of stealing their mail. Hensley tried to defuse the situation, but a girl slapped him, which caused Curtis to become angry. Hensley told Geiseo to remove Curtis from the situation. Geiseo picked Curtis up and handed her to S.S., who took Curtis behind a fence where the two stayed. More people came out of their apartments and into the open.

Hensley then walked to the other side of the fence and saw S.S. pushed against the fence by a police officer. Hensley heard the officer tell S.S. to stop resisting even though S.S. was not resisting. According to Hensley, the officer threw S.S. into both the wooden fence and the chain-link fence a couple of times. S.S. handed his phone to Geiseo, which seemed to calm the officer down. Hensley never saw the officer facing S.S.

3.

Geiseo testified that he and a group of friends were returning from a nearby store when they saw a group of juveniles arguing, and they saw a police car. The juveniles started to push and shove each other. Geiseo saw a male officer slam S.S. against a wooden fence, which broke and hit a woman in the face. He then saw the officer throw S.S. against the chain-link fence. Geiseo did not see S.S. struggling or resisting the officer.

Geiseo walked up to S.S., who asked him to grab his phone. Geiseo took S.S.'s phone and told him not to do "anything stupid." S.S. responded, "I'm not." Geiseo never heard the male officer say anything or make any sort of command. He also never saw the female officer in the area of the altercation, but saw her talking to two females 30 to 35 feet from S.S. and the male officer.

Karen Blagburn testified that her neighbors accused her boyfriend of stealing their mail, which in turn started a fight between a group of juveniles. When Blagburn heard the argument from inside her apartment, she went outside and stood on the ledge of the wooden fence to see the argument on the other side. Blagburn saw S.S. approach a female to calm her down. She then saw a male officer run up to S.S., grab his arm, handcuff him, and swing him against the other side of the fence. The force of S.S. hitting the fence knocked Blagburn backwards, hitting her head and injuring her neck. Blagburn did not see the officer swing S.S. into a chain-link fence.

S.S. testified on his own behalf that he was visiting friends at the apartment complex when he witnessed a group of people yelling at each other about his friend's dad stealing mail. He denied there was a physical fight and claimed not to be involved in the yelling. At some point, a girl tried to hit Hensley. Curtis tried to hit the girl back. S.S. grabbed Curtis and removed her from the situation by physically moving her to the other side of the fence. When someone tried to grab Curtis, S.S. slowly "pushed her away," and he was then pushed against a chain-link fence. According to S.S., Long pushed him against the chain-link fence and pinned him against it by putting his left hand over S.S.'s

4.

left hand and his right hands against S.S.'s neck.  S.S.'s right hand was between his body and the chain-link fence.

When Geiseo approached him, S.S. was able to move his right hand and give him his phone.  Geiseo took S.S.'s phone and told him not to do anything.

Long told S.S. to "stop resisting" multiple times.  S.S. acknowledged that he told Long to say the word "please" twice.  After both times, Long forcefully pinched S.S.'s thumb.  Long then arrested S.S.  S.S. denied jumping on Long's neck and denied resisting the officer.

## DISCUSSION

S.S. argues that, because the count 3 section 148, subdivision (a)(1), resisting, obstructing or delaying a peace officer, is a lesser included offense of the count 2 section 243, subdivision (b) battery on a peace officer, count 3 must be dismissed.  We disagree.

Section 954 provides that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts .…"  (§ 954.)  Further, under that section, "the defendant may be convicted of any number of offenses charged .…"  (*Ibid.*)  However, the law prohibits simultaneous convictions for both a greater offense and a lesser offense necessarily included within it, when based on the same conduct.  (*People v. Milward* (2011) 52 Cal.4th 580, 589; *People v. Medina* (2007) 41 Cal.4th 685, 701-702.)

In determining whether an offense is necessarily included in another, we look to the statutory elements of the offenses.  (*People v. Sanders* (2012) 55 Cal.4th 731, 739; *People v. Ramirez* (2009) 45 Cal.4th 980, 985.)  We ask whether ""all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." [Citation.]'"  (*People v. Lopez* (1998) 19 Cal.4th 282, 288.)  In other words, "if a crime cannot be committed without also necessarily committing a lesser

offense, the latter is a lesser included offense within the former." (*Ibid.*; see *People v. Montoya* (2004) 33 Cal.4th 1031, 1034.)

In this case, S.S. was convicted, in count 2, of a violation of section 243, subdivision (b), which occurs when "a battery is committed against the person of a peace officer … engaged in the performance of his or her duties .…" (§ 243, subd. (b).) Section 242, in turn, defines battery as, "any willful and unlawful use of force or violence upon the person of another." S.S. was also convicted, in count 3, of a violation of section 148, subdivision (a)(1), which occurs when a person "[w]illfully resists, delays or obstructs any … peace officer … in the discharge or attempt to discharge any duty of his or her office or employment .…" (§ 148, subd. (a)(1).)

Even assuming obstructing an officer in the performance of official duties within the meaning of section 148, subdivision (a)(1) is a lesser included offense of section 243, subdivision (b) battery against a peace officer, it would not change the outcome here.

S.S.'s intentional act of jumping on Long's back accomplished two things: battery on Long and obstructing Long from performing his duties, albeit briefly. But, S.S. then committed a second separate act of obstructing Long in the performance of his duties when he refused to respond to Long's commands to handcuff him. As a result, the juvenile court in this case could properly charge and sustain the petition against the minor for both offenses.

## DISPOSITION

The order is affirmed.

6.